## SPENDLOVE v. SHEWCHUCK.

No. 7185.   Decided August 15, 1949.   (209 P. 2d 247.)

See 25 C. J. S., Damages, sec. 37. Contributory negligence, in general, see note, 172 A. L. R. 1141. See, also, 38 Am. Jur. 484.

*Ira A. Huggins,* Ogden, for appellant.

*Wilson & Wilson,* Ogden, for respondent.

PRATT, Chief Justice.

This action was commenced by the plaintiff, LaVora Spendlove, to recover damages for injuries sustained in a fall on the sidewalk on the west side of Washington Avenue, in Ogden, Utah, between 23rd and 24th streets. The cause was tried to a jury, which jury found in favor of the plaintiff and awarded a verdict in the sum of $5,000 general damages, and $1,658.65 special damages. Judgment was entered accordingly.

The respondent was tripped by the handle end of a long handled brush being used by appellant's employee, one Archie Hood. The brush handle was something over six feet in length. Hood was cleaning windows at the Princess Shop which is located on Washington Avenue, at the place previously described. The plaintiff's version of what took place is that as she approached the Princess Shop she could see Hood cleaning windows there, and as she came nearly abreast of him, she turned slightly to the east to go around him, but at that very moment, without warning, he brought the brush down on the window so that the handle protruded into the sidewalk a considerable distance, and between her

legs so that she was tripped and fell to the sidewalk, and broke her left leg between the knee and hip. The version told by Hood is that he at no time let the brush handle extend more than 24 to 26 inches into the sidewalk, and that when it was so extended, it was only some six inches behind his leg. There is no question but what plaintiff was tripped by the handle of the brush. Hood testified that she hit the handle of his brush. The only question factually appears to be whether or not the brush extended well out into the sidewalk or only barely past Hood's leg.

A motion to strike the bill of exceptions was filed in this court by the respondent on the ground that the trial court abused its discretion in setting aside defendant's default in failing to serve, settle and file the bill of exceptions within the time provided in Section 104-39-4, U. C.A. 1943, or any extension thereof. The trial court in a supplementary proceeding before it, at which evidence was taken, set aside the default under authority of Section 104-14-4, U. C. A. 1943. The motion to strike the bill of exceptions was filed in this court on May 19, 1948. The Transcript of Appeal was lodged in this court on May 5, 1948. Notice to this effect was served on plaintiff's attorney, and receipted for by him. On May 6, 1948. A receipted notice was filed in this court May 7, 1948.

Rule V (b) of the Rules of Practice of the Supreme Court of The State of Utah, effective March 1, 1941, and as amended August 13, 1947, provides as follows:

"Motions to dismiss appeals based upon irregularities occurring prior to the filing of the record, and motions to strike the bill of exceptions, must be served and filed within five days after notice of the filing of the record in this court."

Respondent's motion to strike the bill of exceptions was filed out of time, and no reason for this delay has been shown. Under the circumstances this court will not entertain the motion.

Respondent has preserved a bill of exceptions of the proceedings had before the trial court on the matter of setting aside the appellant's default, but she does not cross appeal, nor does she cross assign the ruling of the lower court as error. Thus, respondent has not raised any issue before this court which the court can review, as to the discretion of the trial court in relieving the appellant from his default in serving, settling and filing his bill of exceptions.

The assignments of error relate to the pleadings, admission of certain evidence, and failure to give instructions withdrawing that evidence from consideration by the jury, and finally, in failing to instruct properly on the question of contributory negligence. This latter assignment is to the effect that the trial court should have given two requested instructions instead of those he in fact gave.

The basis upon which it is contended that the complaint fails to state a cause of action, and hence subject to general demurrer, is that it appears from the pleadings that plaintiff was guilty of contributory negligence. The argument is that if she observed the employee as she approached, that she saw and knew of the existing danger. By the complaint she alleges that defendant's servant or employee was washing windows with his face toward the window and as she approached, the employee had the brush extended vertically, but that as she came abreast of him, he pulled the brush down without watching or looking, and thrust it out into the sidewalk and between her legs, tripping her.

We cannot say as a matter of law that because she was aware that Hood was washing windows, that she was also aware of the fact that Hood would bring the brush down and extend the handle thereof out into the sidewalk in such a manner as to trip her. To the contrary, the sidewalks are primarily for the use of pedestrian traffic in the ordinary pursuits, and such persons have the right to expect that

others using the sidewalks in a manner which obstructs or interferes with such use thereof, will exercise at least ordinary care in protecting passers-by from danger created by the obstruction or interference. There was no increased duty upon LaVora Spendlove to anticipate injury from the acts of the window cleaner, merely because she saw him engaged in that occupation. There is nothing in the pleading which indicates that she was aware of any act of his which would put her on notice that he would not use ordinary care and caution in performing his duties; a part of such ordinary care being the duty to observe the movement of pedestrians on the street and to do nothing to imperil them. There is nothing in the pleading to indicate any anticipation, or reason for anticipation, on the part of the plaintiff that defendant's employee would fail to keep a lookout commensurate with the peril he was creating. The complaint does not reveal any contributory negligence on its face which would defeat the cause of action as stated.

An examination of the instructions on the question of contributory negligence indicates that the jury was instructed upon this phase of the case substantially as requested, and, the evidence is hazy as to any specific thing she did or failed to do. A special interrogatory on contributory negligence was presented to the jury, which they answered in the negative. We conclude that no error was committed in these instructions.

We pass then to the question presented as to the admissibility of evidence and the refusal to withdraw certain evidence from the jury, and to instruct the jury that they should disregard it.

The case was submitted to the jury on special interrogatories. Those concerning liability were found in favor of the plaintiff. In addition, each item of damages was set out as a special interrogatory, so that we know what amount was allowed for each group of items. The interrogatories relating to damages and the answers returned by the jury are as follows:

"3. What amount of earnings and subsistence, if any, did the plaintiff suffer loss of by reason of said accident and injuries? Answer $1,000.

"4. What amount of obligations as to doctor, hospital and medical bills did plaintiff suffer, if any, by reason of said accident and injuries? Answer $523.65.

"5. What amount of obligations did the plaintiff incur for the care of her child by reason of said accident and injuries? Answer $135.00.

"6. What amount of general damages, if any, did the plaintiff suffer by reason of said accident and injuries? Answer $5,000."

It is contended that the testimony as to damages sustained on account of the necessity for purchasing medicines, after her injuries, was so vague and uncertain as to not sustain the jury in its verdict. The doctor bills were set forth with certainty, as were the hospital bills. No exact figure was testified to as to the cost of medicines for her, but it was made to appear that because of her condition it was necessary for her to take a great many laxatives; that she had headaches very frequently, and took pills for this, that she had to purchase a hypo needle and have some injections. Neither she nor her husband knew with actual certainty how much all these items had cost, but they did testify as to the costs as they computed them, and the items of expense along this line were covered in some detail. There was substantial evidence upon which the jury could assess damages under interrogatory number 4.

The chief contentions which require analysis appear to be those arising under special interrogatory number 3. There are two main contentions. It is contended first that the husband's loss of wages, or the value of his services were included in respondent's recovery under interrogatory number 3, and that this came about from the improper inclusion of evidence as to his earnings or the value of his services. Secondly, it is contended that included in interrogatory number 3, is a recovery for the loss of egg production brought about by the inability of respondent to take proper care of her chickens. The error claimed here is that the evidence

was so vague and uncertain as to not justify the submission of this matter to the jury.

Leland Spendlove took the stand and was allowed to testify over objection of counsel for defendant as to his earnings during the period immediately before his wife's injury. After she was injured, he quit work in order to take care of her. There was some evidence to the effect that they had tried to get someone to come in and do the work, but were unable to do so. He remained away from work for a total of about 6½ months caring for her. The evidence indicated that he had been employed at the rate of 82¢ per hour at that time, and was making approximately $160.00 per month. There was evidence introduced to the effect that 75¢ per hour was the prevailing and reasonable rate for the services he performed for the respondent.

The damages recoverable by the plaintiff in this action are the same generally as those recoverable in the other personal injury actions. A husband's loss of wages, suffered in quitting work to care for her, is no part of the damages to the wife, nor, under ordinary circumstances, is the value of his services to her as an attendant or nurse. The husband is not a party to this suit. 27 Am. Jur. page 94, Sec. 496 and page 102, Sec. 503.

There is no substantial evidence as to any loss of income to the wife to justify the jury in rendering a verdict for her in the sum of $1,000, under interrogatory number 3. The only item of loss of income to her testified to was that of loss of egg production of her chickens, which loss, if any, was purely conjectural; the evidence thereof being insufficient to afford the jury any basis for determining damages.

It is apparent then that the jury was impressed with, and included as a recoverable item to the wife, either her husband's loss of wages from his job, or else the value of his services as a substitute for a nurse or other attendant. The inclusion of either would be improper since any recovery

for these services would be a matter of importance to the husband only.

The evidence of the value of his services and the loss of his wages were improperly admitted into evidence, and an instruction similar to that requested should have been given the jury as to these items, which would have obviated the effect of this evidence which the jury erroneously seized upon in rendering this part of its verdict.

In view of what we have said above, the judgment of the lower court is reduced by the sum of $1,000; and as so modified, the judgment is affirmed.

WADE, LATIMER, and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring in part—dissenting in part).

I was inclined to hold that the motion to strike the bill of exceptions should have been granted because it was settled out of time, which means, of course, that the reasons for relieving the appellant of his default in failing to obtain extension of the time within which the bill was to be settled did not constitute *excusable* neglect. One of the important reasons, perhaps the most important reason, this court instituted a law and motion day was to enable the clearing up of decisions on procedural points so that the substantive questions only would remain to be argued when the case was finally set for hearing. We have heretofore not been too strict when motions to dismiss or to strike for procedural reasons have not been filed within time, especially when no objection has been raised by opposing counsel. Here the transcript on appeal was lodged in this court on May 5, 1948. Notice of the lodgement was filed herein on May 6, 1948. Hence the motion to strike the bill of exceptions should have been filed before May 12th under Rule V(b) of our Rules of Practice. It was filed seven days late. Of course, no reason was given because no objection was raised by opposing counsel and our action taken sua sponte would be the

first notice that counsel for respondent would have that we of our own motion would refuse to consider his motion to dismiss because he filed it too late. As before stated, counsel usually do not accompany their motions filed for consideration on law and motion days with petitions to be relieved of the default in failing to timely file the same nor with reasons showing or endeavoring to show excusable neglect for the very reason that we have not usually reached out on our own initiative to strike the motion because not timely filed. I agree with the policy often expressed by us that whenever reasonably possible we prefer to hear the case on its merits, but it may be going a bit too far in order to accomplish that for us to note a short delay in filing a motion to strike a bill of exceptions when there was no objection on the part of opposing counsel, in order that we could enable ourselves to by-pass the motion so as to reach a consideration of the merits.

Of course, if respondent is out of court on his motion to strike the bill of exceptions for failure to timely file it, I see no reason for noting that respondent has not cross-appealed or cross-assigned the alleged error of the lower court in relieving appellant of his default in the lower court in failing to have the bill of exceptions timely settled. Since it is mentioned, I am constrained to remark that our purpose in providing for means to try out as a preliminary on law and motion day, the question of whether a bill of exceptions should be stricken or left standing was to avoid the necessity of the appellant having to write his brief two ways—one way on the theory that the bill of exceptions was part of the record and properly before us, and the other that he could rely only on the balance of the judgment roll. I think we should, in a case where there is a record of the testimony taken on a motion to be relieved of default in failing to have the bill of exceptions timely settled, assume that the filing of that record carries with it an implied assignment of error of the ruling of the lower court permitting the default to be set aside, or permit the respondent to file such assignment

before his motion to strike is heard, and then consider on law and motion day the whole matter of whether the bill should be stricken which would include a finding on the question of whether the lower court erred in relieving the appellant of his default, in view of the evidence as it appears in the supplementary bill of exceptions. We should do that in the interests of economy of effort and fair and practical simplified procedure. At this time I am unable to pronounce with certainty that the new proposed procedure will obviate these vexatious questions, but it is my present opinion that they will. Hence my remarks are pertinent only in attempt to treat respondent fairly under our present procedure. As I appear to be alone in my views concerning what I have expatiated on above, I pass to the questions involving the merits of the case.

I am in accord with the remainder of the opinion except as to the part wherein is considered the matter of the wife's right to recover for the loss of her husband's earnings or the value of his services as an attendant if she could not procure any other. I think it unnecessary to make a pronouncement as to these items. I think the matter of the jury allowing $1000 for her loss of earnings and subsistance is sufficiently covered by the statement in the opinion that there is no substantial evidence of any loss of income; that the loss of egg production from her chickens was purely conjectural and the evidence thereof presented no basis to the jury for the determination of damages. I deem it unncessary to conjecture that the jury took into account certain elements in correlating the amount awarded in answer to interrogatory number 3, and then upon that conjecture, discuss those supposed elements.